IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SECURITIES AND EXCHANGE COMMISSION                              PLAINTIFF

VS.                              CIVIL ACTION NO. 5:08-cv-245(DCB)(JMR)

U.S. SUSTAINABLE ENERGY CORP.
AND JOHN H. RIVERA                                             DEFENDANTS

ALICE M. PRICE                                           RELIEF DEFENDANT

## FINAL JUDGMENT

This cause previously came before the Court on the plaintiff Securities and Exchange Commission ("the Commission")'s motion for summary judgment, which the Court granted as to liability, and on a hearing on the issue of remedies.  Following the hearing, defendant John H. Rivera ("Rivera") died, and a certificate of death was filed by the plaintiff.  The plaintiff subsequently filed Proposed Findings of Fact and Conclusions of Law, to which defendant U.S. Sustainable Energy Corp. ("USSE") and relief defendant Alice M. Price ("Price") did not respond.  The Court now issues its Final Judgment as follows:

## FINDINGS OF FACT

1.  The Court previously granted the Commission's motion on the issue of liability, finding defendants USSE and Rivera liable for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.  Dkt. 88 at 38.

2.  USSE's and Rivera's liability was based on a series of

misstatements made to the public by USSE under Rivera's direction. See id. at 29-31.

3.   On October 26, 2006, USSE falsely announced, contrary to facts and Rivera's knowledge, (a) that it was then in receipt of multiple take or pay contracts; (b) that it could then produce five gallons of fuel from one bushel of soy beans; and (c) that its plant was then a fully operational plant in production.  Id. at 29-30.

4.   On November 15, 2006, USSE falsely announced contrary to facts and Rivera's knowledge that Dr. David E. Crowe had joined its board of directors.  Id.

5.   On November 16, 2006, USSE falsely announced contrary to facts and Rivera's knowledge that it had engaged a prominent investment banker.  Id. at 29.

6.   On December 12, 2006, USSE falsely announced via press release, contrary to fact and Rivera's knowledge, that it had acquired a 35-acre manufacturing facility.  Id. at 30.

7.   On December 12, 2006, USSE falsely announced in a second press release contrary to fact and Rivera's knowledge that it had acquired a manufacturing facility in an all-cash transaction.  Id.

8.   On January 17, 2007, USSE falsely announced contrary to fact and Rivera's knowledge (a) that it was ready for green fuel production and (b) that it could produce 6,000 gallons daily.  Id. at 29-30.

9.  On July 17, 2007, USSE falsely announced contrary to fact and Rivera's knowledge (a) that it had developed an OD-66 certified product and (b) that it would begin shipping the product in 72 hours.  Id.

10.  USSE falsely claimed on an ongoing basis, contrary to fact and Rivera's knowledge, that it could produce "biofuel estimated at $.50/gallon according to exhaustive studies and independent lab confirmation."  The claim appeared in a section titled "About U.S. Sustainable Energy," which was included in 24 press releases made on the following dates: October 13, 2006, October 16, 2006, October 17, 2006 (two releases), October 20, 2006, October 26, 2006, October 30, 2006, November 1, 2006, November 2, 2006, November 3, 2006, November 6, 2006, November 7, 2006, November 9, 2006, November 13, 2006, November 15, 2006, November 16, 2006, November 21, 2006 (two releases), November 22, 2006, December 5, 2006, December 6, 2006, December 12, 2006 (two releases) and January 5, 2007.  See Dkt. 61, Ex. 4-6.

11.  USSE also falsely claimed on an ongoing basis, contrary to fact and Rivera's knowledge, that it "holds patent pending technology."  The claim appeared in a section titled "About U.S. Sustainable Energy," which was included in 31 press releases.  The claim appeared in the 24 press releases listed in the preceding paragraph, as well as seven other press releases dated January 8, 2007, January 9, 2007, January 10, 2007, January 17, 2007, January

22, 2007, January 23, 2007 and January 25, 2007.  Id.

12.   Each of the foregoing material misrepresented facts establishes a violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder.  See Dkt. 88 at 31.  Consequently, Rivera and USSE committed at least 38 violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

13.   Relief Defendant Alice M. Price ("Price") filed a Notice of Suggestion of Death on August 16, 2011 (Dkt. 94), alleging that Rivera had died.  The Commission filed a Notice of Filing of a Certificate of Death on September 8, 2011 (Dkt. 97), confirming Rivera's death.

14.   Rivera and Price together sold shares in USSE and used the proceeds to pay their personal expenses and to keep USSE and another business venture running.  See id. at 30-31 (Rivera stating proceeds from sale largely put back into company); see also Dkt. 61, Ex. 2 at ¶¶ 139, 143-4.  During the period from September 2006 through June 2008, Price sold 15,837,740 shares of USSE, generating proceeds of $1,492,687.53.  See Dkt. 61, Ex. 2 at ¶¶ 139, 143-4; see generally DeWitt Dep., Ex. B (compiling global trades in USSE). Price does not challenge the Commission's computation, which is based on Price's brokerage account statements.  See Tr. of August 2, 2011 Evidentiary Hr'g at 40-5.

15.   Additionally, Price cannot point to a compensation plan or debt which explains why Rivera originally transferred the USSE

shares to her.  Price denies that she was ever employed by Rivera personally to care for him during ill health.  See Tr. of August 2, 2011 Evidentiary Hr'g at 37.  Price began assisting Rivera with the management of USSE and his other business ventures in 2002.  She was not officially placed on the USSE payroll until early 2006.  See id. at 37-40.  During the period when she was not paid directly by USSE, Price describes her source of financial support as follows: "John [Rivera] and I supported each other." Id. at 40.  Even after she was placed on the payroll of two of Rivera's companies, Price was still supported at times by Rivera out of whatever funds they had.  Id. at 50.

    16.  Price points to a number of checks written out of her personal accounts for expenses related to Rivera's business ventures. Id. at 45-7.  Price characterizes her personal payments on behalf of USSE and Rivera's other business ventures as a "loan." Id. at 40.  When asked where she obtained the funds to put over $2.4 million into Rivera's business ventures, Price responded that the funds came from the sale of USSE and other stock and a $125,000 loan from a personal friend.  Id. at 45-46, 49.  Price acknowledges that the lender, Admiral Lora, expected the loan to be used for business or personal expenses, as Price and Rivera saw fit.  Id. at 49.  Price has also indicated she had personal savings of approximately $30,000 when she became involved with Rivera, which was a source of funds loaned to Rivera's business ventures.  Id. at

40.

17.  The Court cannot credit Price's explanation for her legitimate claim on the USSE shares which were sold at inflated prices.  The finances of Price and Rivera were commingled to the extent that Price cannot identify the source of funds used for any particular expenditure.  See id. at 49.  The personal obligations of the couple and the business obligations of Rivera's companies were often indistinguishable to Price.  See id.

18.  Rivera and Price had access to the proceeds from the USSE stock sales from August 1, 2008 through February 29, 2012.  Based on the delinquent tax rate established by the Internal Revenue Service, see I.R.C. § 6621(a)(2), and quarterly accrual of interest at the applicable rate, the benefit to Rivera and Price from access to the proceeds is equivalent to $225,797.30.  The quarter-by-quarter interest accrual is as follows:

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal & Interest |
|---|---|---|---|---|
| Violation Amount | | | | $1,492,687.53 |
| 09/30/2008 | 5% | 0.41% | $6,117.57 | $1,498,805.10 |
| 10/01/2008-12/31/2008 | 6% | 1.51% | $22,604.93 | $1,521,410.03 |
| 01/01/2009-03/31/2009 | 5% | 1.23% | $18,757.11 | $1,540,167.14 |
| 04/01/2009-06/30/2009 | 4% | 1% | $15,359.48 | $1,555,526.62 |
| 07/01/2009-09/30/2009 | 4% | 1.01% | $15,683.12 | $1,571,209.74 |

| Prejudgment Violation Range | | | Quarter Interest Total | Prejudgment Total |
|---|---|---|---|---|
| 10/01/2009-12/31/2009 | 4% | 1.01% | $15,841.24 | $1,587,050.98 |
| 01/01/2010-03/31/2010 | 4% | 0.99% | $15,653.11 | $1,602,704.09 |
| 04/01/2010-06/30/2010 | 4% | 1% | $15,983.13 | $1,618,687.22 |
| 07/01/2010-09/30/2010 | 4% | 1.01% | $16,319.91 | $1,635,007.13 |
| 10/01/2010-12/31/2010 | 4% | 1.01% | $16,484.46 | $1,651,491.59 |
| 01/01/2011-03/31/2011 | 3% | 0.74% | $12,216.51 | $1,663,708.10 |
| 04/01/2011-06/30/2011 | 4% | 1% | $16,591.50 | $1,680,299.60 |
| 07/01/2011-09/30/2011 | 4% | 1.01% | $16,941.10 | $1,697,240.70 |
| 10/01/2011-12/31/2011 | 3% | 0.76% | $12,833.93 | $1,710,074.63 |
| 01/01/2012-02/29/2012 | 3% | 0.49% | $8,410.20 | $1,718,484.83 |
| **Prejudgment Violation Range 09/01/2008-02/29/2012** | | | **Quarter Interest Total** $225,797.30 | **Prejudgment Total** $1,718,484.83 |

## CONCLUSIONS OF LAW

19.  The issue of remedies is now ripe for disposition.

20.  In an SEC enforcement action, this Court has the authority through its equitable jurisdiction to fashion an appropriate remedy on a proper showing of a securities violation. See SEC v. Current

Financial Services, Inc., 783 F.Supp. 1441, 1443 (D. D.C. 1992) (citing SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103 (2nd Cir. 1973)).

21. Several of the remedies requested by the Commission are no longer applicable following Rivera's death.  The Commission no longer requires the following equitable relief to protect the investing public: (1) an injunction against Rivera for future violations of Section 10(b) and Rule 10b-5; (2) an injunction against Rivera from acting as a director or officer of any issuer of registered securities or a reporting company; and (3) a Penny Stock bar against Rivera.

22. However, the Commission is entitled to each of the other remedies contained in its prayer for relief.

23. The purpose of disgorgement is to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws.  SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978); SEC v. First City Fin. Corp., 890 F.2d 1215 (D.C. Cir. 1989); Manor Nursing, 458 F.2d at 1104 ("The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable.").  Where defendants' conduct is marked by "pervasive" fraud, the Court may order all profits stemming from the scheme to be disgorged.  See CFTC v. British Am. Commodity Options Corp., 788 F.2d 92, 93-94 (2nd Cir. 1986).

24. The law does not require precision in determining the

proper amount of disgorgement.  This Court "has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1475 (2nd Cir. 1996).  The Commission is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains.  SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004).  In determining the appropriate disgorgement amount, all doubts "are to be resolved against the defrauding party."  SEC v. First City Fin. Corp. 688 F. Supp. 705, 727 (D. D.C. 1988) (quoting SEC v. McDonald, 699 F2d 47, 55 (1st Cir. 1983)).  "Once the [Commission] has established that the disgorgement figure is a reasonable approximation of unlawful profits, the burden of proof shifts to the defendants, who must 'demonstrate that the disgorgement figure is not a reasonable approximation.'"  SEC v. Hughes Capital Corp., 917 F. Supp. 1080, 1085 (D. N.J. 1996)(quoting First City, 890 F.2d at 1232).

25.  Where a securities law violator has enjoyed access to funds over a period of time as a result of his wrongdoing, requiring the violator to pay prejudgment interest is consistent with the equitable purpose of disgorgement.  Id. at 1090.  The Internal Revenue Service's delinquent tax rate reflects what it would have cost to borrow a sum of money from the government and therefore reasonably approximates one of the benefits a defendant receives from having access to the proceeds of fraud.  See First Jersey, 101 F.3d at 1476.

9

26.  Rivera's death is not a bar to a disgorgement order.  "A civil action for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants."  28 U.S.C. § 2404.  Several courts have held that a cause of action for violation of Rule 10b-5, sounding in equity and calling for remedial recovery, survives under the statute.  See, e.g., Federal Sav. & Loan Ins. Corp. v. Fielding, 316 F.Supp. 82, 85 (D. Nev. 1970).

27.  Traditionally, federal common law governs the survivability of claims arising under the federal securities laws.  See Wright, Miller and Kane, 7C FED. PRAC. & PROC. CIV. (3d ed.) § 1954.  Under federal common law, a claim survives a defendant's death if the claim is remedial rather than penal in nature.  Id.  Under the traditional analysis, an action arising under the securities laws seeking disgorgement of profits is remedial rather than penal.  See Epstein v. Schindler, 200 F.Supp. 836, 837-9 (S.D. N.Y. 1961).

28.  The Court finds that the Commission is entitled to disgorgement against Price as Relief Defendant.  Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (a) has received ill-gotten funds; and (b) does not have a legitimate claim to those funds.  See CFTC v. Walsh, 618 F.3d 218, 225 (2nd Cir. 2010) (citing SEC v. Cavanaugh, 155 F.3d 129, 136 (2nd Cir. 1998)).

29. The Commission has established reasonable approximations of the ill-gotten gains which flowed to Rivera and Price as a result of the "pump and dump" scheme, and the benefit which inured to Rivera and Price from their long-term access to the proceeds from the scheme. The Court therefore will order Rivera's estate and Price, jointly and severally, to disgorge $1,492,687.53 and to pay prejudgment interest of $225,797.30, totaling $1,718,484.83.

30. A civil penalty is determined "in light of the facts and circumstances" of a particular case. 15 U.S.C. § 78u(d)(3)(B)(i). "First tier" penalties for violations occurring after February 14, 2005, but on or before March 3, 2009, may be imposed up to the greater of $6,500 for a natural person and $65,000 for any other person, or the gross amount of ill-gotten gain to the defendant as a result of the violation. See 17 C.F.R. § 201.1003; 70 FR 7606-01. When the violation involves fraud, "second tier penalties" may be imposed up to the greater of $65,000 for a natural person and $325,000 for any other person or the amount of ill-gotten gain to the defendant as a result of the violation. A "third tier" civil penalty of up to the larger of $130,000 for a natural person or $650,000 for any other person or the amount of pecuniary gain to the defendant as a result of the violation may be imposed if the violation involved fraud or deceit and the violation resulted in substantial losses or created a significant risk of substantial losses to other persons. Id.

31.  The decision to impose a penalty, and the amount of any such penalty, is a matter within the discretion of the Court.  In determining whether to award civil penalties, courts consider numerous factors, including the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved, whether the defendant concealed his trading, and the deterrent effect given the defendant's financial worth.  SEC v. Sargent, 329 F.3d 34, 42 (1st Cir. 2003).

32.  Rivera's death is not a bar to an award of civil penalties.  The court in Fielding, cited above, further held that the cause of action under Rule 10b-5, rooted in equity, may survive even if punitive damages are requested, and that punitive damages may be awarded if the cause of action is otherwise one that survives.  316 F.Supp. at 85.  Because the civil penalties here presuppose disgorgement of ill-gotten gains, the action survives Rivera's death and civil penalties may be assessed against Rivera's estate.

33.  Rivera's and USSE's actions were egregious.  The size of the harm produced by USSE's misstatements through Rivera is egregious: thousands of investors purchased millions of shares of USSE securities in this "pump and dump" scheme.  See DeWitt Declaration, Ex. B.  The nature of the misstatements was egregious: For instance, at a time when Dr. David Crow had not even heard of USSE, USSE informed the public that this respected scientist had made glowing endorsements of USSE and that he had accepted a seat on

12

USSE's board of directors.  Finally, the repetition and volume of misstatements was egregious.

34.  Rivera's and USSE's violations of the securities laws were recurrent.

35.  Rivera and USSE acted with a high degree of scienter.  In each of the misstatements found herein, Rivera caused USSE to release information to the public which he knew to be false.

36.  For all of the above reasons, USSE's and Rivera's conduct falls under the "third tier."

37.  Rivera's estate will be ordered to pay a third-tier civil penalty in the amount of $130,000.00.

38.  USSE will be ordered to pay a third-tier civil penalty in the amount of $650,000.00.

39.  USSE, Rivera and Price will be ordered to pay all amounts ordered against them herein no later than thirty days after the entry of this Order.

Accordingly,

IT IS HEREBY ORDERED AND ADJUDGED that the defendants are liable to the Commission for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")(15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder;

FURTHER ORDERED AND ADJUDGED that the Commission is entitled to disgorgement against defendant Rivera's Estate and against relief defendant Price;

FURTHER ORDERED AND ADJUDGED that Rivera's Estate and Price, jointly and severally, shall disgorge $1,492,687.53 together with prejudgment interest of $225,797.30, totaling $1,718,484.83, to the Commission;

FURTHER ORDERED AND ADJUDGED that Rivera's Estate shall pay a civil penalty to the Commission in the amount of $130,000.00;

FURTHER ORDERED AND ADJUDGED that defendant U.S. Sustainable Energy Corp. Shall pay a civil penalty to the Commission in the amount of $650,000.00.

FURTHER ORDERED AND ADJUDGED that U.S. Sustainable Energy Corp., Rivera's Estate, and Price are to pay all said amounts no later than thirty days after the entry of this Final Judgment.

SO ORDERED AND ADJUDGED, this the 21st day of May, 2012.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE